## Case No. 759.

### BAIRD v. SHORE LINE RY. CO.

[6 Blatchf. 461.][1]

Circuit Court, D. Connecticut. June 17, 1869.

BRIDGES—ERECTION—DRAWBRIDGE—ACT FEB. 19, 1869.

By the act of February 19th, 1869, (15 Stat. 273,) authority was given to the Shore Line

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

Railway Company to erect a drawbridge over the Connecticut river, although this court had held [Baird v. Shore Line Ry. Co., Case No. 758] that such bridge would be an obstruction to navigation, and had enjoined its erection. The injunction was dissolved by the court, because of the passage of such act.

[Cited in Hatch v. Wallamit Iron Bridge Co., 27 Fed. 674.]

[In equity. Bill for injunction by William M. Baird against the Shore Line Railway Company. Heard on motion to dissolve the provisional injunction heretofore issued in this cause. Baird v. Shore Line Ry. Co., Case No. 758. Injunction dissolved.]

Richard D. Hubbard, for plaintiff.

Tilton E. Doolittle and Henry B. Harrison, for defendants.

NELSON, Circuit Justice. This motion is founded upon the act of congress passed February 19th, 1869, (15 Stat. 273.) The legislature of the state of Connecticut passed an act authorizing the defendants to erect and maintain a railroad bridge across the mouth of the Connecticut river. The second section provided that the bridge should be constructed and used so as not to be a substantial obstruction to the free navigation of the river, and should be provided with two draws, each of which should be of the width of at least one hundred and twenty feet; and that, during the season of navigation, the draws should be kept open, except when closed for the passage of engines and cars. Various other regulations were prescribed, to be observed by the defendants, which do not require to be particularly noticed. The third section provided, that the bridge and draws should be located and constructed in such manner, at such places, and upon such plan, as a board of engineers, to be appointed by the superior court of the state, should approve. The defendants, having procured the approval of such board, commenced the erection of the bridge, but were soon thereafter restrained from further proceedings, until the cause should be heard on pleadings and proofs, by a preliminary injunction issued by the court, on the ground that the bridge would substantially obstruct the navigation of the river. In this posture of the case, an application was made to congress on the subject, in pursuance of which the act in question was passed.

It is claimed, on the part of the defendants, that this act removes the objection taken by the court to the erection of the bridge, and authorizes its construction according to the plan prescribed by the legislature of the state, and approved by the board of engineers, while it is insisted, on the part of the plaintiff, that, according to the true construction of the act, the question still remains for the court to decide, whether or not the bridge, as thus built, will present a substantial obstruction to the navigation.

This first section of the act provides, that the consent of congress is given to the erec-

tion of a drawbridge over the Connecticut river, &c., by the Shore Line Railway Company, in accordance with the terms of a resolution passed by the general assembly, &c. The second section provides, that the bridge, when completed in the manner specified in said resolution, and in the place, and in accordance with the plans of the board of engineers, &c., and in accordance with the requirements of the second section of the resolution of the general assembly, &c., shall be deemed to be a legal structure, &c. The argument, on the part of the plaintiff, is, that, inasmuch as the first and second sections of the act, which are relied on as legalizing the bridge, refer to one built in conformity with the requirements of the legislature of the state, and one of those requirements is, that it shall be so built as not to be a substantial obstruction to the navigation, if it can be shown, to the satisfaction of the court, that it would be, if erected, the preliminary injunction should be continued—that the requirement referred to must be shown to have been complied with, in order to bring the case within the authority conferred by the act of congress. The argument is plausible. But I am not satisfied that it is sound, or can afford sufficient ground for disregarding the general intent of the act, and the fair import of particular provisions of the same. The clause in the resolution of the legislature of the state is but declaratory of a principle of law, and added nothing to the legal effect of that resolution. If it had been omitted, the construction of the state act would have been the same. Therefore, I am not satisfied that the act of congress, when it refers to the mode and manner of the construction of the bridge, and to the duties and obligations of the defendants, as prescribed in the state law, and, especially, in the second section of that law, has any reference to the principle of law there declared. It refers to the mode and manner of the construction of the bridge, and to the duties and obligations of the defendants as thus prescribed, that is, to the construction and use of the bridge.

The fourth section of the act, I think, confirms this view. Congress there reserves the right to withdraw its consent to the erection of the bridge, in case free navigation of the river shall at any time be substantially obstructed. It should be remembered that, at the time of the passage of this act, the court had enjoined the erection of the bridge, on the ground, that, in its judgment, the bridge would, if erected, be a substantial obstruction. The question, whether it will be so or not, is not left to the courts, but congress seem to have taken it under their own charge, and to have admonished the defendants that, if the bridge shall, when built, turn out to be an obstruction, they will withdraw their assent to its erection, and leave the courts to deal with it.

Another consideration worthy of note is, that, according to the construction claimed by the plaintiff, the act would be without any force or effect, and utterly nugatory. The power to confer upon the defendants authority to build a bridge over this river, belonged to the sovereign state of Connecticut, and was not at all dependent upon congress. This power, however, is subject to the qualification, that the bridge must be built so as not materially to obstruct the navigation of the river. So far as any impediment to the navigation is concerned, the power of congress is paramount; but not beyond this. Pennsylvania v. Wheeling & Belmont Bridge Co., 18 How. [59 U. S.] 421. Unless this act, therefore, was intended to confer authority to erect the bridge, notwithstanding this court had held it to be an obstruction to navigation, it was, legally speaking, an act without an object, and without any effect. I do not inquire what opinions individual members of congress may have held or expressed on this subject. I can look only to the act itself, and ascertain the intent and meaning of the law-making power from its terms and provisions.

Upon the best consideration I have been able to give to the case, I think that it was the intention of congress, by the act in question, to legalize the bridge, constructed in the mode and manner prescribed by the legislature of the state; and, as a consequence, the preliminary injunction, heretofore issued, must be dissolved.